UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FT. LAUDERDALE DIVISION

CASE NO.:

JAMES HARVEY GELIN,

    Plaintiff,

v.

MEGAN J. BRENNAN,
POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE

    Defendant.
_____/

## COMPLAINT

Plaintiff, JAMES HARVEY GELIN ("Gelin"), by and through undersigned counsel, sues Defendant, MEGAN J. BRENNAN, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE ("USPS"), and alleges:

### STATEMENT OF CASE

1. This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII"), as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981a (the "CRA"). Gelin brings this proceeding for equitable relief, including back pay, front pay, compensatory damages, and attorneys' fees and costs, as redress for acts of racial discrimination (disparate treatment, harassment and hostile environment, and retaliation), which have deprived Gelin of his secured rights under Title VII.

### PARTIES, JURISDICTION AND VENUE

2. Gelin is a resident of Miami-Dade County, Florida and is otherwise *sui juris*.

3. At all times material, Gelin was and continues to be a black male.

4. Gelin has been employed as a City Carrier Assistant by USPS since on or about September 9, 2016. As such, Gelin is an employee of the USPS, within the meaning of Title VII.

5. Defendant, Megan J. Brennan, is the Postmaster General of the United States and is being sued in her official capacity.

6. USPS is a federal agency which is covered specifically by Title VII.

7. USPS has more than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year.

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §1331, as the lawsuit is authorized and instituted pursuant to Title VII. The right to file this action in the United States District Court is also expressly authorized pursuant to 29 C.F.R. §1614.407.

9. Venue in the Southern District of Florida is proper pursuant to 28 U.S.C. §1391(e) because Defendant is an agency of the United States, and the employment practices complained of occurred in Fort Lauderdale, Broward County, Florida. Venue is also appropriate pursuant to 42 U.S.C. §2000e-5(f)(3), as the employment records relevant to the alleged discriminatory practices are maintained and administered in this judicial district.

## GENERAL ALLEGATIONS

### Procedural Background

Facts relating to EEOC Case No. 510-2019-00056X

10. Gelin began his tenure as a USPS employee as a City Carrier Assistant ("CCA") at the Lauderridge Carrier Annex in Oakland Park, Florida.

11. Within the first week of his employment with USPS, Gelin was racially profiled by his supervisor Carlos Rodriguez, when Rodriguez told him, "your kind will not work out" as an employee of USPS.

12. Gelin understood that by "your kind," Rodriguez meant "black American." This understanding was subsequently reinforced as Rodriguez frequently referred to Gelin condescendingly as "the help," which is generally understood as a pejorative designation for black Americans in servile occupations. Furthermore, without knowing that Gelin understood Spanish, Rodriguez referred to Gelin as a "cocoliso," which can be roughly translated, in the context used by Rodriguez, as a "stupid bald (like a coconut) black person."

13. Between September 2016 and August 2017, Gelin was harassed, and his job performance sabotaged, by his three supervisors, Carlos Rodriguez ("Rodriguez"), Thomas Rios ("Rios"), and Jordan Beabout ("Beabout") on virtually a daily basis. The harassment, *inter alia*, consisted of: persistent mocking and humiliation by his supervisors; falsification of Gelin's clock rings; fabricated reports of unsatisfactory work performance, frequent monitoring of Gelin during his route for the overreaching purpose of seeking grounds for punitive, rather than corrective, discipline; false accusations of missing scans; false accusations of losing keys to the postal vehicle; establishment of impracticable performance targets to ensure that Gelin's performance evaluations were inadequate; furnishing Gelin with inoperative seat belts and then writing Gelin up for failure to use his seatbelt; routine issuance of letters of warning; and continuous and persistent threats of putting Gelin "off the clock" by suspending him and/or removing him.

14. The "bullying" tactics described in paragraph 13 were disparately used against Gelin, to the extent that no employee outside of Gelin's protected class was similarly the "focus"

of supervisors Rodriguez, Rios, and Beabout efforts to find grounds for his or her suspension and removal by USPS, as was Gelin.

15. As part of the pattern of harassment, Rodriguez, Rios and Beabout kept Gelin in a "double-bind." Specifically, when Gelin would answer Rodriguez's questions, Rodriguez would ask Gelin "not to talk" because Rodriguez felt that each time Gelin spoke it was by way of provocation. Nevertheless, if Gelin did not speak and opted to remain tacit when questioned, his supervisors likewise found Gelin to be a "credible threat" by virtue of his alleged menacing stare or "scary" silence.

16. Union shop steward Cookie Quiles ("Quiles") was a witness to the harassment of Gelin by his supervisors and gave a written statement so describing the harassment of Gelin, which is attached as Exhibit "1" and incorporated herein by reference. See Exhibit 1, Statement of Cookie Quiles, contained in Report of Investigation into EEOC Case No. 510-2019-00056X, at pp. 00024-00032.

17. On more than one occasion, when Quiles supported Gelin in the face of harassing conduct by Rodriguez, Rodriguez told Quiles that Gelin was "her boy," which comment also bears the earmark of racial denigration and discrimination.

18. On or about July 27, 2017, Gelin initiated an EEO complaint regarding his hostile work environment and disparate treatment, based on race.

19. Almost immediately thereafter, on August 3, 2017, Gelin was placed without pay on "Emergency Placement in Off-Duty Status." This constituted a retaliatory adverse employment action which lasted for more than a month.

20. In or about late September 2017, Gelin was transferred to the Inverrary Post Office in Lauderhill, Florida to work as a CCA.

21.     On his first day at the new station, Gelin's new supervisor Steve Santarcangelo, told Gelin, "I know all of the supervisors at the station that you came from and if you fuck me I will fuck you."

22.     On or about September 22, 2017, Gelin filed an EEO Complaint of Discrimination in the Postal Service.

23.     On November 8, 2017, in retaliation for the exercise of his civil rights, USPS gave Gelin a 7-day suspension.

24.     Gelin was not returned to an assigned tour after the suspension, and remained on leave without pay until February 7, 2018, when Gelin was issued a Notice of Removal.

25.     The allegations of paragraphs 10-21 and 23-24 were incorporated into a formal EEO complaint and a request for hearing, Case No. 510-2019-00056X.  While these allegations are pending and have not been administratively exhausted, they are nevertheless included in this Complaint because they provide the relevant background and context for the adjudication of the continuing ineffable acts of harassment and discrimination against Gelin which do form the basis of this Complaint, and to demonstrate that USPS has systematically ambushed Gelin's employment with USPS for no reason other than that the Agency has succumbed to invidious and unlawful racial profiling and stereotyping.

<u>The Facts Relating to EEOC Case No. 510-2019-00018X</u>

26.     Gelin was returned to work at the Alridge Station in Fort Lauderdale in approximately May 2018.

27.     Gelin was supervised in his new location by Tiffany Peters ("Peters"), Dorothy Brown ("Brown"), Shawn McIntyre ("McIntyre") and Tiffany Dukes ("Dukes").

28. Shortly after his return to work, Gelin was told by Peters that she knew all about his derogatory recorded history with prior management, and of Gelin's previous EEO complaints, and that she was not going to tolerate any more "threatening" conduct.

29. From the commencement of Gelin's work at the Alridge Station, Peters would monitor Gelin in the field in an effort to create an adverse dossier relating to Gelin's performance. This special field surveillance constituted disparate treatment, inasmuch as no employees outside of Gelin's protected class were so monitored.

30. On or about June 23, 2018, McIntyre and Peters conducted "street observation" on Gelin during his route and approached him. During the "observation," Peters entered Gelin's postal vehicle which was parked on public property, and searched his wallet without his permission.

31. Gelin apprised Peters that the search was unlawful and Peters responded that as his supervisor she "could do whatever she felt like doing."

32. The search violated Gelin's implicit First and Fourth Amendment constitutional right to privacy from governmental intrusion and unreasonable search and, as such, constituted harassment of such severity as to be actionable under Title VII.

33. During the June 23, 2018 search of Gelin's wallet, Peters found that Gelin had a Florida-issued concealed weapons license.

34. On or about June 25, 2018, Peters again conducted a search of Gelin's vehicle, ostensibly in an effort to find that Gelin had a weapon. No weapon was found.

35. Peters' focus on USPS' unavailing effort to establish that Gelin was a "threatening" employee, in the absence of one iota of evidence, constitutes racial profiling and unlawful harassment under Title VII.

36. On June 26, 2018, Gelin initiated a complaint with EEOC relating to the disparate and harassing treatment on June 23, 2018 and June 25, 2018.

37. On June 27, 2018, with no probable cause, Peters called the Postal Police to perform a body search of Gelin while he was on his daily route.

38. The June 27, 2018 search also violated Gelin's implicit First and Fourth Amendment constitutional right to privacy from governmental intrusion and unreasonable search and, as such, constituted harassment of such severity as to be actionable under Title VII.

39. After no weapon was found, Gelin was called in for an "investigation." Incident to the "investigation," USPS management created a pretextual dossier which falsely charged Gelin with various deficiencies in the performance of his work.

40. On August 17, 2018, USPS placed Gelin on a 7-day suspension. There was no ascertainable "incident" on August 17, 2018 to precipitate the suspension. Purportedly, this discipline related back to Gelin's alleged conduct and deficiencies in his work performance during the June 23, 25 and 27, 2018 searches of his person and vehicle.

41. The charges against Gelin were ultimately found by the union (through the grievance process) to lack merit. Accordingly, the 7-day suspension was rescinded in a Step B decision which found that the suspension was issued without just cause because it was punitive in nature and untimely issued (41 days after the alleged infraction).

42. Despite the finding of "no just cause" against Gelin for the suspension, on or about September 8, 2018, McIntyre and Dukes performed another "street observation" on Gelin, during which they harassed Gelin by cutting him off in an unmarked vehicle with tinted windows. Because he did not recognize the vehicle, and fearing for the safety of postal property, Gelin called 911, who arrived at the scene and questioned McIntyre and Dukes.

43. After the September 8, 2018 incident, USPS again pretextually created a derogatory record against Gelin, alleging various work performance deficiencies (which were again found to have "no just cause" by the grievance committee).

44. Since September 8, 2018, USPS has refused to allow Gelin to work. The decision to put Gelin irrevocably off the clock is circumstantially cognizable only in the context of the full mosaic, which is comprised of continuous, persistent and inexorable acts of racial profiling by Peters, Brown, Dukes and McIntyre.

45. On or about September 27, 2018, Gelin received a call from Postal Inspector Jaleesa Osbourne, who told Gelin that she took personally the fact that Gelin called 911 on Dukes and McIntyre during his route, and that she would "come after him."

46. Upon information and belief, the personal threat against Gelin by Jaleesa Osbourne, who did not personally know Gelin, was instigated by Peters, McIntyre, Brown and Dukes.

47. On or about January 16, 2019, USPS issued a Notice of Removal, which cited, pretextually, Gelin's conduct during the event of September 8, 2018, as precipitating the adverse employment action. With no just cause, this Notice of Removal reflects the ultimate act of racial discrimination against Gelin, an ultimate doubling down on USPS' inexorable determination to depict Gelin as a "credible threat" for no reason other than the color of his skin.

48. Insofar as Gelin has been vindicated with respect to each and every allegation of inadequate job performance, the articulated non-discriminatory motives for each and every adverse employment action taken against Gelin are unworthy of credence and are pretextual. USPS has been motivated, in fact, by a desire to bully Gelin out of the employ with the Agency for no just lawful cause.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

49. On or about November 26, 2018, Gelin timely filed a formal EEO Complaint of Discrimination in the Postal Service which alleged, *inter alia*, that he was discriminated against on the basis of race when (1) on June 23, 25 and 27, 2018 he was unlawfully searched by his supervisors and by Postal Police; (2) on August 17, 2018 USPS issued a 7-day suspension for conduct occurring on June 23, 25 and 27, 2018, without cause; and (3) for refusing to allow Gelin to work from September 8, 2018, and thereafter. The complaint was accepted for investigation by the National EEO Investigative Services.

50. The Complaint was amended on February 1, 2019 to include the claim that on January 18, 2019, Gelin was issued a Notice of Removal which also constituted race-based discrimination. The amendment was also accepted for investigation.

51. On March 4, 2019, National EEO Investigative Service Office issued a "Transmittal of Investigative File" which states, in pertinent part:

> **Records show you have already requested a hearing before the EEOC (for this case), and that request is still pending.** Until we are notified otherwise, this places your complaint within the jurisdiction of the EEOC. For that reason, instead of offering you the choice between a hearing or an immediate final agency decision (as per 29 C.F.R. § 1614.108(f)), we will forward this Report of Investigation direct to the EEOC.

(Emphases in original).

52. Despite the fact that Gelin was not offered the option of a hearing before an administrative judge, as reflected in paragraph 51, a Final Agency Decision (without hearing) was issued on or about August 8, 2019 which denied Gelin's claims. That decision contained an averment by the EEO Services Analyst that the Complaint was dismissed by Administrative Judge

Brockman without a hearing because Gelin's request for hearing was premature when made, and never reasserted during the appropriate time period.

53. While the Final Agency Decision asserts that Judge Brockman advised Gelin of his right to request a hearing upon receipt of the Report of Investigation, Gelin's records do not reflect that he was ever apprised of the rejection of his "premature" request for a hearing or advised that he must reinitiate his request for a hearing after receipt of the Report of Investigation. To the contrary, as suggested by the Transmittal of Investigative Report, a deliberate decision was made <u>not</u> to offer Gelin the choice of a hearing. Should it become known during discovery that Gelin was denied his procedural due process by virtue of the issuance of a Final Agency Decision without a hearing, despite his having requested a hearing which was acknowledged and which appears to have been accepted, Gelin reserves the right to amend this Complaint accordingly.

54. On or about August 8, 2018, USPS served Gelin via U.S. mail with the Final Agency Decision which expressly affords Gelin the right to file a civil action in an appropriate United States District Court within 90 calendar days of Gelin's receipt of that Decision. A true and correct copy of the Final Agency Decision is attached as Exhibit "2".

55. This action timely follows Gelin's receipt on or about August 10, 2019 of the Final Agency Decision. Accordingly, Gelin has exhausted his administrative remedies and has timely invoked the jurisdiction of this Court.

## **RESPONDEAT SUPERIOR/AGENCY**

56. Each individual referenced in the foregoing allegations was at all times material an employee or agent of USPS, and the alleged acts of all individuals occurred and were committed entirely within the course and scope of each individual's employment or agency with USPS.

57.     All conduct on the part of each individual referenced above was of the kind that the individual was employed or was an agent to perform, occurred within the time and space limits of the employment, and was activated by a purpose to serve USPS, the employer or principal.

58.     USPS' officers, directors, or managers knowingly condoned, ratified or consented to the conduct of the individuals acting as USPS' employees or agents. Accordingly, USPS is liable for its own corporate discriminatory acts or omissions, and is vicariously liable for the acts or omissions of any of its agents, apparent agents, servants and/or employees, and/or contractually related entitles acting within the course and scope of their agency, apparent agency, employment, and/or contractual relationship and in furtherance of USPS' business pursuits. As such, the doctrine of *respondeat superior* applies and forms the basis of imputed liability to USPS with respect to each and every cause of action asserted below.

## COUNT I

### Violations of Title VII
### (42 U.S.C. §2000e(2) and (3)(a) (Sections 703 and 704(a))

### Employment Discrimination Based on Race
### (Disparate Treatment, Harassment/Hostile Work Environment, and Retaliation

59.     Gelin realleges paragraphs 1 through 55 as Paragraph 59.

60.     As a black male, Gelin is a member of that protected class within the meaning of Title VII.  Further, at all times material, Gelin was a member of a protected class within the meaning of Title VII because he expressed opposition to discriminatory practices made unlawful by Title VII, which the Defendant imposed against him as a black male and as an employee of the United States Postal Service, on the basis of race.

61.     At all times material, Gelin was qualified for his employment as a City Carrier Assistant and performed his job adequately.

62. Any and all assertions by USPS that Gelin failed to adequately perform his job duties as a City Carrier Assistant have been advanced pretextually and with no just cause.

63. No USPS employee outside of Gelin's protected class has been subjected to the type of racial profiling and false discipline (including adverse employment actions such as suspension without pay and "removal" from USPS for lengthy periods) that Gelin has been subjected, as more fully set forth above, for no valid reason other than that he is a black male.

64. Any and all efforts by USPS to characterize Gelin's job performance as unsatisfactory, or his character as distinctive (insofar as warranting discipline (including suspension and "removal" without pay) in comparison with other CCAs outside of Gelin's protected class who were not so subject to adverse employment acts), are purely pretextual.

65. The chain of events alleged in this Complaint demonstrate that Gelin was subjected to unwelcome harassment which was race-based.

66. The harassment described herein unreasonably interfered with Gelin's work performance by creating a work environment that was intimidating, hostile, and offensive.

67. USPS has irremediably altered the conditions of Gelin's employment, to the extent that Gelin has been "off-the-clock" without pay for more than half of the period of his 3+ year tenure with USPS; has been subjected to egregious racial stereotyping by USPS whose agents have double-victimized Gelin by characterizing him as a "threat" both when he rebuts false allegations against him and when he remains silent; and has been subjected to obloquy and ignominy and unjustly caused Gelin to become a pariah amongst his peers.  Under the totality of the circumstances alleged, USPS' actions are sufficiently severe and pervasive to constitute a hostile and abusive working environment.

68.     USPS had knowledge or, in the exercise of reasonable care, should have had knowledge, of the true facts relating to the racial profiling of Gelin and at all times material elected to disregard all complaints by Gelin and record evidence that Gelin was being unjustly demerited in his job performance evaluations time and again as pretext for ineffable acts of racial stereotyping, profiling and hostility.  As such, USPS has failed to take appropriate corrective steps to halt the hostile work environment and, instead, USPS has doubled-down on its discriminatory conduct against Gelin. As such, USPS is liable for its harassing conduct and hostile work environment.

69.     Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

70.     On the basis of race, USPS, together with its employees and/or agents, has discriminated against Gelin, and has subjected Gelin to disparate treatment, retaliation and a harassing and pervasively and severely hostile and abusive work environment. Accordingly, USPS has discriminated against Gelin with respect to his compensation, terms, conditions, or privileges of employment.

71.     USPS failed to exercise reasonable care to prevent and promptly correct the harassing, hostile and retaliatory conduct of its employees and/or agents, but rather supported and ratified such conduct through a willful and malicious pattern of twisting and fabricating facts for the purpose of depicting Gelin himself as a menacing employee who was guilty of unacceptable conduct in the workplace. The factual record devised by USPS to defend against Gelin's allegations is not only clearly pretextual, but may be properly understood to reflect vestigial patterns of both white on black (or Hispanic on black) and black on black racism in which

interactions between black and white persons are routinely interpreted to cast a black actor as a mythical "bogeyman" at first blush and without adequate investigation, which patterns, despite having deep historical roots, have been fortunately largely eradicated from modern society. The actions of USPS in this regard, through its strenuous pretextual attempts to single out Gelin and to vilify and demonize him, under the false guise of protecting its employees, coupled with its failure to conduct a thorough or evenhanded investigation into the factual truths underlying the various occurrences described herein by avoiding solicitation of information from witnesses who would be expected to corroborate Gelin's version of events, disregarding information from witnesses who **did** corroborate Gelin's version of events, were committed with malice or reckless indifference as to Gelin's rights and in fact have deprived Gelin of his rights under Title VII.

72. The acts of retaliation against Gelin, including suspension and protracted "removal" from employment, were the direct and proximate cause of Gelin's having opposed acts made unlawful by Title VII.

73. As the direct and proximate result of the USPS's race discrimination and retaliation, Gelin has suffered damages and will continue to suffer irreparable injury and damages in the future, including but not limited to: (i) loss of back pay, bonus and benefit incentives (including retirement), and front pay (as the result of continuing "unemployment"); (ii) damage to confidence and self-esteem; (iii) stress, anxiety, and emotional distress resulting from Gelin's having been cast as a pariah amongst his colleagues; (iv) depression and loss of capacity for the enjoyment of life; and (v) significant past and future pain and suffering.

**WHEREFORE**, Gelin respectfully requests this Court to enter judgment awarding him actual damages; back pay; front pay; out of pocket expenses; loss of benefits; consequential damages; damage to his reputation past and future; lost and future wages; lost and future wage

earning capacity; attorneys' fees and costs pursuant to 42 U.S.C. §2000e(5)(k) of Title VII and the CRA; and all such just and equitable further relief as will effectuate the purpose of Title VII. Gelin further pleads for pre-and post-judgment interest at the maximum allowable rate.

## **DEMAND FOR JURY TRIAL**

Gelin demands a trial by jury of all issues triable as of right by jury

**DATED** this 6th day of November, 2019, in Miami Beach, Florida.

> Respectfully submitted,
>
>   s/ Howard Levine
> HOWARD J. LEVINE, ESQ.
> Fla. Bar No. 0075670
> Law Offices of Howard Levine
> 1560 Lenox Avenue
> Suite 307
> Miami Beach, Florida 33139
> Tel:    (305) 534-0403
> Fax:    (305) 672-5305
> HLevineEsq@aol.com